IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELISSA SIMONS,                        )
                                       )
                    Plaintiff,         )
                                       )     CIVIL ACTION
v.                                     )
                                       )     No. 10-1377-JWL
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental
security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).
Finding error in the Commissioner's evaluation of Plaintiff's treating physician's opinion,
the court ORDERS that the decision is REVERSED, and that judgment shall be entered
pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case.

I.      Background

Plaintiff applied for DIB and SSI on August 27, 2008 and September 1, 2008
respectively, alleging disability beginning January 10, 2008.  (R. 9, 220-27).  The

applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 9, 88-91, 105-07).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on October 7, 2009.  (R. 9, 54-87).  At the hearing, testimony was taken from Plaintiff.  Id. Thereafter, the ALJ submitted an interrogatory to a medical expert, and Plaintiff requested a supplemental hearing to question the expert.  (R. 9, 378-83, 478-94).  A supplemental hearing was held on March 3, 2010 and testimony was taken from the medical expert, Dr. Winkler, and from a vocational expert, Mr. Benjamin.[1] (R. 9, 28-53).  Plaintiff appeared at both hearings, represented by counsel.  (R. 9, 28-87).

On April 23, 2010, ALJ Dayton issued his decision, finding at step four that Plaintiff is capable of performing past relevant work, and also at step five that there are other jobs existing in the economy that Plaintiff is able to perform.  (R. 9-22).  Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications.  (R. 21-22).  Plaintiff submitted additional medical records, and sought Appeals Council review of the decision.  (R. 206-09, 507-20).  The Council accepted the additional evidence, and made it a part of the administrative record, but found no reason to review the ALJ's decision, and denied Plaintiff's request.  (R. 1-5).  Therefore, the

---

[1]The ALJ's decision might be read to imply that Dr. Winkler and Mr. Benjamin appeared and testified at the first hearing. (R. 9).  However, neither appeared at the first hearing, and the only testimony taken at the first hearing was that of Plaintiff.  (R. 54-87). At the supplemental hearing, both Dr. Winker and Mr. Benjamin appeared and testified. (R. 28-53).

2

ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466

F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she

4

has a severe impairment, and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or

equal a listed impairment, the Commissioner assesses claimant's residual functional

capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is

used at both step four and step five of the sequential evaluation process.  Id.

       After assessing claimant's RFC, the Commissioner evaluates steps four and five--

whether claimant can perform her past relevant work, and whether, when considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show jobs existing in the economy within Plaintiff's

capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

       Plaintiff claims that the ALJ should have given controlling weight, or at least great

weight, to Dr. Wang's treating source opinion; that the ALJ did not take all of Plaintiff's

severe impairments into account and did not provide a proper basis when assessing

Plaintiff's RFC; and that the ALJ's credibility finding is not supported by substantial

evidence in the record.  The Commissioner argues that substantial evidence supports the

ALJ's credibility determination; that the ALJ properly evaluated Dr. Wang's medical

opinion; and that the ALJ properly assessed Plaintiff's RFC, including consideration of all of the relevant evidence, and explained the bases for reaching his conclusions.  The court addresses the issues in the order of the sequential evaluation process, and begins with consideration of the ALJ's evaluation of Dr. Wang's treating source opinion.

## III.   Evaluation of Dr. Wang's Treating Source Opinion

Plaintiff cites to Dr. Wang's opinion that Plaintiff is unable to sit or stand for more than a few minutes and that her muscle pain would make it difficult to be employed, and claims that this opinion should be accorded controlling weight because it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the rest of the record evidence.  (Pl. Br. 11-12).  Plaintiff cites to Dr. Wang's treatment notes, pointing to examination and testing results supporting Dr. Wang's diagnosis of limb girdle muscular dystrophy and suggesting that Plaintiff experiences muscle pain and an inability to sit or stand for more than a few minutes.  (Pl. Br. 12-13).  Next she cites to other record evidence which in her view is consistent with Dr. Wang's opinion, asserts that the only opinions which contradict Dr. Wang's observations were those of nontreating or nonexamining sources, and argues that such opinions may not be used to discount a treating source opinion.[2]  (Pl. Br. 13-14).  After

---

[2]The regulations define three types of "acceptable medical sources:"
"Treating source:"  an "acceptable medical source" who has provided medical treatment or evaluation in an ongoing relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined

arguing that Dr. Wang's opinion should have been accorded controlling weight, Plaintiff argues that in any event the reasons given by the ALJ for discounting Dr. Wang's opinion are insufficient, improperly weighted, and inadequately explained to overcome the deference normally due a treating source opinion.  Id. at 14-16.  Of particular importance here is Plaintiff's argument that the ALJ does not suggest what is a sufficient length of treatment and does not provide specific examples of inconsistencies between Dr. Wang's opinion and the record.  Id. at 14.  The Commissioner argues that the ALJ properly discounted Dr. Wang's opinion, and points to record evidence tending to show that Dr. Wang had a limited treatment relationship with Plaintiff, that the objective findings do not support Dr. Wang's opinion, and that other record evidence is inconsistent with Dr. Wang's opinion.  (Comm'r Br. 17-19).

### A.    The ALJ's Evaluation of Dr. Wang's Opinion

The ALJ acknowledged that Dr. Wang was one of Plaintiff's treating physicians who provided a medical opinion.  (R. 18).  He summarized the opinion: "Dr. Wang speculated that the claimant's muscle pain made it difficult for her to be employed."  (R. 18) (citing Ex. 22F (R. 506)).  He explained the standard for evaluating a treating source opinion, noting that such an opinion must be accorded controlling weight if it "is well-supported and consistent with the other substantial evidence in the case record."  Id.

———————————————

the claimant, but provides a medical opinion.  Id.

7

(citing 20 C.F.R. §§ 404.1527, 416.927; Soc. Sec. Ruling (SSR) 96-2p). He then stated

the rule applicable when controlling weight is not accorded a treating source opinion:

> When a treating source opinion is not afforded controlling weight, the
> following factors will be considered: the length of the treatment
> relationship and the frequency of treatment, the nature and extent of the
> treatment relationship, the supportability of the opinion, the consistency of
> the opinion, any relevant specialty of the treating source, and other relevant
> factors.

Id. (citing 20 C.F.R. §§ 404.1527, 416.927).

> The ALJ provided six reasons for discounting Dr. Wang's opinion:

> In this case, Dr. Wang has a [(1)] relatively brief treating relationship with
> the claimant, and [(2)] does not appear to see the claimant frequently.
> Furthermore, [(3)] her opinion is not consistent with the longitudinal
> medical records in this case. Moreover, Dr. Wang provides [(4)] no
> functional analysis, [(5)] no basis for her opinion, and [(6)] no suggestion of
> the claimant's abilities. Based on these factors, the undersigned does not
> find Dr. Wang's conclusory opinion persuasive and thus gives it little
> weight.

Id. (numbering added for clarity).

## B.    Standard for Evaluating a Treating Physician's Opinion

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2011) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. <u>Id.</u> "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end. <u>Id.</u> A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.      Analysis

Plaintiff's argument that Dr. Wang's opinion should have been given controlling weight is without merit. The threshold for denying controlling weight is low. At the second step in deciding whether a treating source opinion must be given controlling weight, the ALJ determines whether the treating source opinion is "not inconsistent" with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). SSR 96-2p explains the term "not inconsistent," noting that a treating source opinion does not have to be consistent with all the other record evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2011) (emphases added). It explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR 96-2, id. at 113. Evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source] medical opinion." SSR 96-2, id. at 113. The ruling explains that an obvious inconsistency between the treating source opinion and the other substantial evidence

10

occurs "when two medical sources provide inconsistent medical opinions about the same issue." Id.

That is the situation presented here. Dr. Wang found that Plaintiff is "[u]nable to sit or standing [sic] for more than few [sic] minutes" (R. 470) (treatment letter, March 31, 2009), and that Plaintiff "experiences muscle pain which makes it difficult for her to be employed." (R. 506) ("Medical Statement of Diagnosis"). The state agency medical consultant, Dr. Vopat, on the other hand, stated, "Overall, the physical allegations are non/severe." (R. 467). Clearly, Dr. Vopat's medical opinion is inconsistent with the opinion of Dr. Wang on the issue of Plaintiff's employability. Moreover, Dr. Winkler found that sitting is not affected by Plaintiff's impairment, and that although standing and/or walking are affected by the impairment, Plaintiff can stand and/or walk about six hours in an eight-hour workday, and she can push or pull with her lower extremities for two hours at a time, up to six hours total in a day. (R. 490-91). Therefore, Dr. Winkler's opinion is inconsistent with Dr. Wang's opinion on the issue of Plaintiff's capabilities for sitting, and for standing and/or walking. The fact that Dr. Wang's opinion might be consistent with other record evidence, does not change the fact that it is inconsistent with substantial evidence in the record--Dr. Vopat's and Dr. Winkler's opinions. It was not error for the ALJ to find Dr. Wang's opinion is unworthy of controlling weight.

However, Plaintiff also argues that the reasons the ALJ provided to discount Dr. Wang's opinion are inadequate, and suggests that they are not supported by record evidence. In particular, as noted above, Plaintiff argues that the ALJ erred in suggesting

11

that the treating relationship was too brief and Plaintiff does not see Dr. Wang frequently, and that the ALJ did not point to any examples of inconsistencies between Dr. Wang's opinion and "the longitudinal medical records." (Pl. Br. 14). With regard to these particular issues, the Commissioner points out, first, that "[m]edical records suggest Dr. Wang saw Plaintiff only four times in two years." (Comm'r Br. 18) (citing Lopez v. Barnhart, 183 Fed. Appx. 825, 829 (10th Cir. 2006)). He then cites to evidence in the medical record which, in his view, is inconsistent with Dr. Wang's opinion. Id. The court agrees with Plaintiff, however.

As the Commissioner's brief suggests, the evidence reveals that Dr. Wang is an Assistant Professor in the Department of Neurology at the University of Kansas Medical Center, who examined Plaintiff only four times between January 2007 and March 2009. (R. 394-99) (Jan. 30, Dec. 18, 2007); (R. 470-72) (Mar. 31, Apr. 7, 2009). However, Dr. Wang's opinion letter was dated February 10, 2010, and stated that Plaintiff "is being followed in the Neurology Department of the University of Kansas Medical Center for care and treatment." (R. 506). Moreover, each of Dr. Wang's treatment notes is in the form of a letter report addressed to Plaintiff's primary care physician, Dr. Salvador. (R. 394, 398, 470). In context, at the date of the decision in April 2010, Plaintiff was alleging disability beginning January 2008, which was caused, at least in part, by the condition for which she had been seeing Dr. Wang continuously since January 2007. Absent greater explanation and elaboration, the court finds error in the ALJ's description of this as a "relatively brief treating relationship."

12

The Commissioner also argues that four visits in two years establishes, as the ALJ found, that Plaintiff does not see Dr. Wang frequently.  (Comm'r Br. 18) (citing Lopez v. Barnhart, 183 Fed. Appx. 825, 829 (10th Cir. 2006) (four visits in six months is an adequate basis to discount the treating source opinion)).  Four visits in two years is by no means an overwhelming number of doctor's visits, and certainly Plaintiff does not see Dr. Wang "frequently" in the common understanding of the term.  However, in the circumstances of this case it was error for the ALJ to find that Dr. Wang is a treating physician ("Yunxia Wang, M.D., one of the claimant's treating physician's") (R. 18), while also discounting Dr. Wang's opinion because she does not see Plaintiff frequently.

Dr. Wang is a specialist, a neurologist to whom Plaintiff was referred with respect to the evaluation of certain symptoms, which eventually led to Dr. Wang's diagnosis of limb girdle muscular dystrophy.  The ALJ never mentioned that Dr. Wang is a specialist, and neither the ALJ nor the Commissioner specifically discussed whether four visits in two years is infrequent in the circumstances of this case.  Moreover, neither the Commissioner nor the ALJ noted that Plaintiff has a primary care physician, Dr. Salvador, to whom all of her specialists' reports were forwarded, and with whom Plaintiff had regular contact.  (R. 437, 462-64, 474-77, 503-05, 508-09).

The regulations define a "treating source" as Plaintiff's "own physician," who provides Plaintiff with medical treatment in an ongoing treatment relationship wherein "the medical evidence establishes that [Plaintiff] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or

evaluation required for your medical condition(s)." 20 C.F.R. §§ 404.1502, 416.902 (emphasis added). The regulations explain, "We may consider an acceptable medical source who has treated or evaluated you only a few times . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)." Id. (emphasis added). Here, the ALJ found that Dr. Wang is Plaintiff's treating physician, thereby necessarily implying that Plaintiff sees Dr. Wang "with a frequency consistent with accepted medical practice for" neurological treatment as required for her condition, and that the "frequency of the treatment . . . is typical for [her] condition." Id. In these circumstances, the ALJ's finding that Dr. Wang "does not appear to see the claimant frequently" (R. 19) is erroneous. In addition to having necessarily found that Dr. Wang saw Plaintiff with the appropriate frequency, the ALJ said nothing about factors which might be proper in determining whether Plaintiff should have seen the specialist more frequently, such as the efficient use of the specialist's time, whether more frequent specialist visits are necessary to manage this chronic and apparently slowly progressing condition, and the qualifications and ability of Plaintiff's primary care physician in these circumstances to provide continuity of care between specialist visits.

The decision in Lopez does not require a different conclusion. The Lopez decision is not absolutely clear, but the physician at issue there appears to have been the claimant's primary care physician. Lopez, 183 Fed. Appx. at 828-29. In any event there is no indication in that decision that the physician was a specialist; Plaintiff had only seen the physician for a total period of six months, and had seen the physician only four times. Id.

14

Here, Dr. Wang is a specialist, Plaintiff had a primary physician whom she was seeing regularly, Plaintiff had seen Dr. Wang for more than two years, and Plaintiff began seeing Dr. Wang with respect to her allegedly disabling condition about a year before she alleges she became disabled.  Moreover, in <u>Lopez</u>, the court found other bases to discount the physician's opinion--the physician provided concurrent conflicting opinions, and the physician's opinions were contradicted by substantial record evidence.  <u>Id.</u>

Finally, the ALJ's finding in this case that Dr. Wang's opinion "is not consistent with the longitudinal medical records" is not supported by substantial record evidence. Other than the medical records regarding Plaintiff's mental condition, the ALJ summarized little of the medical records regarding Plaintiff's physical condition.  He summarized Dr. Yost's treatment and surgery on Plaintiff's knee, and noted that Plaintiff returned thereafter, complaining only of lower back pain.  (R. 16, 17, 18) (citing Ex. 3F). He summarized Dr. Williams's records, noting that she observed "absent deep tendon reflexes and bilateral facial weakness," and that the Plaintiff complained to her of episodic weakness that is worse toward the end of the day.  (R. 17) (citing Ex. 4F).  He noted x-ray and MRI reports from 2008,  a course of physical therapy, and "a steroid injection, which [Plaintiff] testified did not provide any relief for her pain."  (R. 17-18) (citing Exs. 3F, 5F, 14F).  Beyond that, the ALJ addressed only the medical opinions of: the medical expert, Dr. Winkler; a consultant physician, Dr. Subramanian; the state agency physician, Dr. Vopat; and Dr. Wang.  (R. 18-19).  The ALJ summarized Dr.

15

Wang's opinion, and stated his reasons for discounting it, but he said nothing regarding Dr. Wang's treatment notes.  (R. 18-19).

In Plaintiff's first visit, Dr. Wang did an examination, and a "select EMG."  (R. 398-99).  She noted an "Impression" of "Myalgia in a patient with family history of probable myotonia dystrophy 2," and stated she would pursue "DM2 genetic test" considering "main complaint is myalgia and father is negative for DM1."  (R. 399).  At Plaintiff's next visit, Dr. Wang noted the DM2 genetic test was negative, that Plaintiff "has areflexia,[3]" and that she has decreased sensation to light touch and pinprick in the lower legs.  (R. 394).  Dr. Wang concluded there was "no evidence she has known myotonic dystrophy," and ordered additional lab work.  (R. 395).  On March 31, 2009, Dr. Wang noted that Plaintiff had increased weakness and muscle pain since the last visit, and that she was unable to sit or stand for more than a few minutes.  (R. 470).  After that visit, Dr. Wang explained, "I believe the patient has true muscle weakness consideration [sic] the facial muscle weakness.  I think probably we are dealing with limb-girdle muscular dystrophy [(LGMD)]."  Id.  One week later on April 7, 2009, Dr. Wang did a full EMG, and found "moderate active denervation was seen in the Gastroc med muscles. Myopathic units were seen among all muscles examined."  (R. 472).  Dr. Wang recorded her "Impression:  EDXs showed evidence of irritative myopathic process, genetic for LGMD or muscle biopsy should be considered."  Id.

_____

[3]No reflexes.  Stedman's Medical Dictionary, 128 (26th Ed. 1995)

While Dr. Wang's notes are equivocal, they do show the progression of Dr. Wang's evaluation, and an ultimate conclusion that Plaintiff has limb girdle muscular dystrophy. Moreover, they suggest an inability to sit or stand for more than a short time along with facial weakness and lower extremity weakness. None of this was discussed by the ALJ. Yet, he concluded that Dr. Wang's opinion is not consistent with the longitudinal medical records. In context, however, Dr. Wang's opinion is consistent at least with the longitudinal development within her own medical records.

Additionally, the ALJ specifically noted Dr. Williams's observation of absent reflexes and bilateral facial weakness, and Plaintiff's complaint to Dr. Williams of episodic weakness, worse toward the end of the day, but found that Plaintiff's complaint of episodic weakness was "unsubstantiated." (R. 17) (citing Ex. 4F, pp.2-3 (R. 410-11)).

A review of Dr. Williams's treatment note which was cited by the ALJ reveals the following "Assessment:"

> 2) Patient does complain of episodic weakness mostly towards the end of the day. Myasthenia Gravis cannot be completely excluded especially with bilateral facial weakness as well as absent reflexes which may point to a lower motor neuron type of an illness such as neural muscular junction versus motor, versus peripheral nerve.

(R. 411) (emphases added). Although there are no later medical records from Dr. Williams, and there is no evidence Dr. Williams's plan for follow-up was implemented, in the circumstances it is error to say that Dr. Wang's opinion is inconsistent with the longitudinal medical record which includes Dr. Williams's examination and assessment. Although Dr. Williams was considering the possibility of myasthenia gravis, a

17

neuromuscular disorder, rather than muscular dystrophy, a muscular disorder,[4] several of the operative symptoms reported by the doctors are identical, Dr. Williams appeared to be considering the possibility that the problem might be either muscular or neural, Dr. Williams's treatment notes are at least somewhat consistent with Dr. Wang's opinion, and no medical source stated otherwise.

The ALJ provided six reasons for discounting Dr. Wang's opinion, and as discussed above, the court finds that three of those reasons are not supported by substantial record evidence.  Moreover, the court's discussion of Dr. Wang's treatment notes also brings into question the ALJ's fifth finding--that Dr. Wang provided no basis for her opinion.  In these circumstances, remand is necessary for the Commissioner to properly evaluate Dr. Wang's treatment notes and her opinions regarding Plaintiff's ability to sit and stand and Plaintiff's employability.

Because a proper evaluation of Dr. Wang's opinion may affect the ALJ's view of Plaintiff's credibility, and because RFC assessment is necessarily intertwined with evaluation of the medical opinions and of the credibility of Plaintiff's allegation of symptoms, it would be premature for the court to attempt to address Plaintiff's allegations of error in the ALJ's credibility determination and in his RFC assessment.  Plaintiff may make those argument to the Commissioner on remand.

---

[4]The Merck Manual classifies myasthenia gravis as a neurologic disorder of neuromuscular transmission, and immediately thereafter classifies muscular dystrophies as muscular disorders.  The Merck Manual of Diagnosis and Therapy, 1496-1500 (Mark H. Beers, M.D., and Robert Berkow, M.D., eds., 17th ed. 1999).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is

REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING this case.

Dated this 13th  day of October 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**